DECKER v. PACIFIC COAST S. S. CO. et al.

(First Division. Juneau. December, 1906.)

No. 477A.

1. LANDLORD AND TENANT (§ 170*)—INJURIES FROM DEFECTIVE CONDI-
   TION OF PREMISES—NUISANCE.

   It is a well-settled rule of law that, whenever a nuisance exists upon the premises at the time of letting, the landlord, by letting the premises in such condition, consents to the continuance of the nuisance, and is liable for all injuries to third persons from its continuance by the tenant. A tenant is not liable for a nuisance created by his landlord and not by himself.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 685–689 ; Dec. Dig. § 170.*]

2. NAVIGABLE WATERS (§ 37*)—TIDE LANDS—CONVEYANCE.

   Owners of abutting upland conveyed the tide land. The widow of the vendor, deceased, brought suit to recover possession, claiming that the right of ingress and egress was an incorporeal hereditament, and as such runs with the land, and cannot be severed and conveyed. Denied.

   [Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

3. NAVIGABLE WATERS (§ 43*)—WHARVES—ABATEMENT—LACHES.

   Plaintiff brought suit to abate certain wharves, erected by defendants ten years before, on tide lands owned by them in front of her property, as a nuisance. _Held_, under the circumstances of the case, plaintiff was estopped by laches.

   [Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 43.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

E. M. Barnes, for plaintiff.

Shackleford & Lyons, for defendants.

GUNNISON, District Judge.   Elizabeth Decker, the plaintiff herein, brings this action against the Pacific Coast Steamship Company to abate an alleged private nuisance, which the plaintiff asserts has been maintained by the defendant company for two years or more prior to and at the time of the commencement of the suit.   She asks damages in the sum of $1,000. The defendant Johnston is the joint owner with the plaintiff of block L of the town of Juneau, and is made a defendant in this action; he having refused to join as a plaintiff.   Plaintiff and defendants seem to agree generally as to the facts in the case, with one exception, and that is as to whether or not, on February 20, 1897, blocks K and L abutted upon the line of ordinary high tide; plaintiff contending that, by the deed (Defendants' Exhibit A) itself the contention is settled, because it is there recited:

"Lots K and L, the same abutting on Franklin street, in said city; the said street running along the line of ordinary high tide, being the shore of Gastineaux Channel, in the said town of Juneau."

The evidence adduced on the trial shows that blocks K and L did abut upon the tide land.   Nor does the recital in the deed as quoted above negative such a conclusion.

On October 13, 1893, the entry of the townsite of Juneau was duly made by direction of the Secretary of the Interior, under a public survey by G. W. Garside.   Blocks K and L were laid out by Garside within the boundaries of the town. At that time Edward O. Decker and J. M. Decker were holding the land by right of possession, and they continued to so hold it until October 1, 1898, when deeds passed to them from the townsite trustee, Thomas R. Lyons.   Subsequent to the entry, but prior to receiving the deeds from the trustee, and on February 20, 1897, Edward O. Decker and J. M. Decker,

together with the plaintiff, then the wife of Edward O. Decker, joined in a deed to the People's Wharf Company, a corporation organized under the laws of Oregon, by which the three "remised, released and forever quitclaimed" to the company, in the following language:

"The right, title, interest, and estate, legal or equitable, of the party of the first part in and to the shores of Gastineau Channel, which we may now or may hereafter possess, by virtue of any law of the United States or otherwise, by reason of our now being the owners of block K and L, the same abutting upon Franklin street of said city, the said street running along the line of ordinary high tide, being the shore line of Gastineau Channel, in the town of Juneau; and we do, as such owners, grant to said party of the first part, and forever quitclaim to them, all littoral and riparian rights appurtenant thereto, if any, that we may now have or that may hereafter exist by any cause whatsoever in our favor, our heirs, administrators, or assigns.

"And we do further hereby grant to the party of the first part the right to wharf out from our said premises southwesterly to deep water, and to maintain wharves and warehouses thereon for the benefit of trade and commerce, and to own and occupy the same forever, by itself, its successors and assigns, except the building occupied by us, and the land upon which said warehouse is situated."

The interest there conveyed passed by certain mesne conveyances, which are in evidence, to the Pacific Coast Company, which is the lessor of the Pacific Coast Steamship Company, this defendant. Prior to the execution of that lease, the structures alleged to be the nuisance were erected upon the tide lands in front of blocks K and L.

The plaintiff, who, with the defendant John Johnston, now, owns block L, deraigns her title through Edward O. Decker, her deceased husband. It is alleged by plaintiff and admitted by the defendant that block L abuts upon the tide land of Gastineau Channel. The evidence nowhere discloses any change in the relative position of block L and the tide land between

the time of the giving of the deed and the commencement of this suit.

There are in the case three questions, any one of which is decisive:

First. Is or is not the Pacific Coast Steamship Company the real party in interest? If it be merely the lessee, can this suit be maintained against it? The evidence discloses that the Pacific Coast Steamship Company is the lessee, and that the Pacific Coast Company is the owner. It is a well-settled rule of law that, whenever a nuisance exists upon the premises at the time of letting, the landlord, by letting the premises in such condition, consents to the continuance of the nuisance, and is liable for all injuries to third persons from its continuance by the tenant. To state the converse of the rule, a tenant is not liable for a nuisance created by his landlord, and not by himself. My conclusion is that the Pacific Coast Steamship Company is not the real party in interest, and that the suit should be dismissed.

As to the second question in the case, that is, as to whether or not the deed of February 20, 1897, can be held to convey the rights of plaintiff to the tide land, we are of the opinion that the Deckers at that time were the owners of the abutting upland, as against all persons save the United States, and that they consequently were the owners of the littoral right, or the right of access to deep water.. The plaintiff contends that this right is an appurtenance to the land, in other words, an incorporeal hereditament, and as such runs with the land, and cannot be severed from it. We cannot agree with him upon this proposition. We cannot see that the cases cited sustain it. Were that contention true, the granting by the government of the United States of a patent to abutting uplands would carry with it the absolute right to the tide lands. This, however, is not the fact, for the tide lands are held by the federal government for the benefit of the future state, to be

dealt with by the state as it sees fit; and, under the cases cited by plaintiff, the various states taking title to the tide lands in this way have seen fit to grant the tide lands to strangers, separate and apart from the upland holdings. The holder of abutting tide lands has what is termed a "littoral right," that is, a right of ingress and egress to the deep water over the tide lands abutting upon his property; and the same is true of a patentee of the United States, subject, of course, to the control of the future state. That the holder by possessory title or a patent may exercise that right, or give the right to some other, is beyond question, and has been so held in repeated instances. It was clearly the intention of the Deckers, at the time of the execution of the deed of February 20, 1897, to release to the People's Wharf Company their rights of ingress and egress over the tide lands abutting upon their property. In the opinion of the court, the quitclaim deed effectually conveyed any right which they then held as possessory owners, or which they might thereafter acquire as patentees of those premises from the United States. It is therefore apparent that against either of these contentions plaintiff cannot succeed, and the action should be dismissed.

It also appears to the court that plaintiff, even though she had not effectually transferred those rights which were attempted to be transferred by the deed, cannot at this late day be heard to object to the action of her grantees under and relying upon that deed in the construction of wharves and other structures which took place under her very eyes. A person seeking redress of the character which she here seeks should be and is, in the opinion of the court, estopped from questioning these acts after the long lapse of time, especially when she does not plead, as an excuse for her lack of diligence, fraud or misrepresentation on the part of the defendant.

Our conclusion is, therefore, that the suit should be dismissed.